Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 7943 | DATE | 3/30/2001 |
| CASE TITLE | Emma Balenton vs. William A. Halter, Commissioner of Social Security | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment [11-1] is denied. This matter should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings. Judgment is entered in favor of Plaintiff and against the Commissioner.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 30 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 12 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials KMC | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EMMA BALENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 99 C 7943 |
| ) | |
| WILLIAM A. HALTER,[1] ) | |
| Commissioner of Social Security, ) | Magistrate Judge Nolan |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Emma Balenton ("Plaintiff") brings this action against William A. Halter, Commissioner of Social Security ("Defendant"), seeking judicial review of the Social Security Administration's decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 423(d). This matter is now before the Court on cross motions for summary judgment. The parties have consented to the jurisdiction of the United States Magistrate Judge Pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part and Defendant's motion for summary judgment is DENIED.

## I. PROCEDURAL HISTORY

On October 11, 1996, Plaintiff filed an application for a period of disability insurance benefits under §§ 216(i) and 223 of the Social Security Act alleging disability since July 25, 1995 due to bilateral carpal tunnel syndrome and cubital tunnel syndrome. Record ("R.") 14. Her initial

---

[1] William A. Halter is substituted for his predecessor, Kenneth S. Apfel, as Secretary of Health and Human Services pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

application and reconsideration application were denied. R. 59-62, 65-67. Plaintiff requested and received a hearing before Administrative Law Judge ("ALJ") K. Michael Foley. On May 13, 1998, Plaintiff, represented by counsel, testified at the hearing on her own behalf regarding her claims. Pursuant to the ALJ's request, Vocational Expert Carl Triebold also testified. By written order dated August 25, 1998, the ALJ concluded that Plaintiff was not disabled as defined under the Social Security Act, finding that while Plaintiff's impairments prevented her from performing her past work, she was able to perform a significant number of other jobs within the national economy. R. 19. On October 26, 1999, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. R. 7-8. Accordingly, the ALJ's decision stands as the Social Security Administration's final decision for purposes of judicial review. Plaintiff now seeks judicial review of the ALJ's decision.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Testimony and Medical History

Plaintiff was forty-six years old at the time of her administrative hearing. R. 27. Plaintiff completed high school and a year and a half of college. Her past relevant work included a twenty-five year position with the Chicago Transit Authority ("CTA") as a ticket agent. Id. This position involved taking fares, giving directions, counting money, and punching or accepting 500 to 700 transfer tickets each day. R. 29, 30. In her past work Plaintiff was also required to carry money bags each day that weighed between ten and twenty pounds. R. 46. Plaintiff has not engaged in substantial gainful activity since July 25, 1995. R. 37. In January 1996, she retired from the CTA. R. 28.

2

At the administrative hearing, Plaintiff described her impairments and symptoms as follows. In early 1995, Plaintiff began experiencing pain and tenderness in her thumbs which got progressively worse. R. 29. The pain and swelling in her fingers and palms (of both hands but predominantly her right hand) severely limited her ability to grip. R. 30-31. Plaintiff tries to not to lift anything in excess of three pounds. R. 40. She engages in therapy that includes flexing and working with putty. R. 42. Because she lives alone, Plaintiff attends to her own household chores; however, she experiences pain by the end of the day. R. 35-36. Her chores include mopping, vacuuming, laundry, and personal grooming. R. 35, 43. Plaintiff has adjusted her lifestyle to accommodate her impairments in the following ways: keeping her hair cut short so that it is easy to style; utilizing plastic cups so as not to worry about dropping and breaking dishes; cooking ready-made meals or using lightweight cookware; grocery shopping with a companion; and driving only once or twice a week within her immediate neighborhood. R. 36, 40-43.

Medical records received as evidence revealed the following. As early as April 1995, Plaintiff complained to her doctor about right hand discomfort. R. 172. Early medical entries document Plaintiff's use of a right wrist splint. R. 15. Beginning in June 1995, Plaintiff began treatment with an orthopaedic physician, Samuel Chmell, M.D. R. 30, 172. On June 19, 1995, Dr. Chmell noted that Plaintiff was experiencing "persistent pain along the volar aspect of the right thumb." R. 166. Dr. Chmell diagnosed Plaintiff with "flexor tendinitis of the right thumb, possibly associated with carpal tunnel syndrome." Id. Because Plaintiff's condition was exacerbated with "repetitive activities" and her job required that she use her dominant right hand to repeatedly stamp/punch ticket transfers, Dr. Chmell recommended that Plaintiff change her job. R. 37, 166. In August 1995, Dr. Chmell reported that recent tests revealed that Plaintiff experienced "changes

3

consistent with mild bilateral carpal tunnel syndrome." R. 162. He also reported that Plaintiff's right hand had been relieved by wearing a splint and being off work for the past month. Id.

In October 1995, Dr. Chmell noted that Plaintiff was receiving physical therapy and again recommended that Plaintiff change her job. R. 160. Plaintiff, however, testified at the hearing that even after she stopped working she has not noticed any significant improvement in her condition. R. 35.

In November 1995, when Plaintiff complained she was not improving, Dr. Chmell referred her to Dr. Gonzalez for consideration of surgery. R. 157. On December 14, 1995, Plaintiff underwent carpal tunnel release surgery. R. 16. She testified at the hearing that her December 1995 surgery helped her condition only temporarily. R. 31. According to Plaintiff, her disappointment in the first surgery caused her to decline surgery on her left hand. R. 32. Her doctor's notes, however, reveal the following: on December 20, 1995 Plaintiff reported some relief of her symptoms; on December 27, 1995, Dr. Chmell reported Plaintiff as doing "exceedingly well;" on March 15, 1996, Plaintiff reported having only a little discomfort, her strength was greatly improved, her range of motion was within normal limits, and she was capable of performing functional activities at home. R. 129, 141, 142. Plaintiff's March 1996 medical progress notes and physical therapy notes indicate that her right hand was doing well at that time, that she only had a little discomfort, and that her strength had greatly improved. R. 129, 130. In June 1996, Dr. Gonzalez reported that since her surgery, Plaintiff has experienced much improvement with total resolution of her symptoms. R. 125.

Plaintiff's symptoms eventually ran up into her right elbow, and on October 16, 1996, Dr. Gonzalez diagnosed her with mild cubital tunnel syndrome. R. 122. At that time, Dr. Gonzalez

4

recommended that Plaintiff wear elbow splints at night during sleep to immobilize her arms to relieve the pressure that caused her pain. R. 32-34, 121. On November 14, 1996, Ernest C. Bone, M.D., a state agency evaluator, undertook an independent review of the record evidence to date and opined that Plaintiff's exertional limitations were consistent with medium work activity. R. 86-93. Neither before nor after Dr. Bone's assessment have any of Plaintiff's treating physicians expressly opined that she is unable to work. R. 18.

In February 1997, Dr. Gonzalez recommended "conservative treatment" including continued use of her splints and Ibuprofen for pain relief. R. 114. In April 1997, Dr. Gonzalez reported that Plaintiff continued to complain of right elbow pain. R. 113. At that time she wore her splints "intermittently" with some relief. Id. In June 1997, Dr. Gonzales noted that Plaintiff had numbness in her fingers. R. 110. He recommended that Plaintiff continue with conservative treatment and follow-up every two to three months. Id.

### B. Vocational Expert's Testimony

Vocational Expert Michael Triebold reviewed the documents pertaining to Plaintiff's case prior to the hearing and was present at the hearing during Plaintiff's testimony. R. 45. The ALJ asked the vocational expert hypothetical questions about Plaintiff, her alleged symptoms, and her ability to perform work to assist him in deciding her claim for disability benefits. The first hypothetical question was as follows:

> Please assume that I might find from all of the evidence in this case that this claimant is of her stated age, that she has the education to which she's testified and that she has the past relevant work experience you've just identified. Please also assume that I might find that she has the residual functional capacity to perform a full range of light work as that's defined in the applicable Social Security Regulations, except that she would do no jobs requiring the repetitive use of either of her hands or fingers on

5

either hand. That she would be limited to the occasional use of her upper extremities. Under this hypothesis, could she return to her past relevant work?

R. 47. The vocational expert responded in the negative, explaining that occasional use of the hands, defined by the expert as "up to one third of the day," would "eliminate all occupations." R. 47-48. However, the expert thereafter noted that his response assumed that Plaintiff worked with her hands for "two and a half hours and then can't for the rest of the day." R. 48.

The ALJ then asked the expert to instead define the occasional hand use as usage of the hands for one third of the workday spread out through the entire shift. R. 48. The expert queried the ALJ about his meaning of "repetitive use of the hands" to which the ALJ responded "let's stick to the definition of occasional which you've already defined, a third of the workday." R. 48-49. Under these clarified parameters of the ALJ's hypothetical question, the expert explained that certain jobs in the national economy exist which are categorized as "light work" where a person would use their hands throughout the day for only two and a half hours out of an eight hour shift. R. 49. Some such jobs include an appointment/reception clerk (3000 jobs available at the light level in the Chicago statistical metropolitan area), gate/access control clerk (2000 jobs), information clerk (1000 jobs), and sales attendant (2000 jobs). R. 49-50.

The vocational expert acknowledged that the number of available jobs might be diminished by some of Plaintiff's alleged impairments. For example, Plaintiff claims that she can only use her hands for a limited amount of time throughout the day, but the vocational expert acknowledged that an individual performing the job of an appointment/reception clerk, by the nature of the job, cannot control the flow of the work. R. 52. Also, Plaintiff testified that dampness exacerbates her pain, and the expert acknowledged that about half of the gate/access clerk positions would require the

6

employee to sometimes work outside in cold weather or rain. Id. The ALJ next asked the vocational expert whether Plaintiff could perform any jobs in the national economy assuming "instead of the ability to use her hands occasionally, the claimant is limited to the seldom or rare use of her upper extremities." R. 50. The expert explained that the jobs he previously recommended were "at the higher end of the occasional definition or twenty to thirty-three percent of the time." Id. Therefore, under the limitation of "less than about twenty percent" use of upper extremities, the vocational expert opined that Plaintiff could not effectively perform the recommended jobs. Id.

In his final hypothetical question, the ALJ asked: "If I assume that everything the claimant has testified to here this morning is true, could she return to her past relevant work or do any other work?" R. 50. With respect to her ability to do her past work, the vocational expert stated that Plaintiff could not perform such work because of the lifting she was required to do.[2] Id. With respect to her performance of other jobs, the vocational expert explained that if occasional use of her hands causes pain then she would not be able to perform any jobs. R. 51.

C. **The ALJ's Findings and Conclusions**

In step five of his analysis, the ALJ found that Plaintiff was capable of performing significant work in the national economy. R. 19. He found that Plaintiff "retains the residual functional capacity for the performance of light work activity, requiring only occasional use of her hands and arms;" however, she "would be precluded from engaging in activities involving occasional lifting of more than 20 pounds or frequent lifting and carrying of more than 10 pounds." Id. Although the ALJ determined that Plaintiff could not return to her past relevant work which required repetitive

---

[2] Based upon Plaintiff's description of her job duties, the vocational expert designated Plaintiff's past work as an unskilled light occupation. R. 47. However, under the Dictionary of Occupational Titles, her position as a ticket agent is categorized as sedentary in nature. Id.

7

hand and finger movements, he found that under the defined residual functional capacity Plaintiff could perform jobs such as an appointment and reception clerk, gate/access clerk, sales attendant, and information clerk. R. 18-19. Finding that Plaintiff is not disabled within the meaning of the Social Security Act, the ALJ denied her claim for disability insurance benefits. R. 19.

In making his decision, the ALJ evaluated Plaintiff's credibility considering the following factors: the objective medical evidence, Plaintiff's daily activities, the nature of Plaintiff's symptoms; precipitating and aggravating factors, the medications and any side effects, and other treatment and measures to relieve symptoms. R. 17-18. The ALJ found that Plaintiff was credible "only to the extent that she would be limited to the performance of light work, with only occasional use of her hands and arms." R. 18. He noted that the objective medical tests "fail to substantiate to the degree of functional loss alleged by the claimant in this case," and that Plaintiff's stated range of daily activities are inconsistent with total disability. Id.

### III. ANALYSIS

Under the Social Security Act, a person must be disabled in order to be eligible for benefits. A person is disabled if she has an "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less then 12 months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order:

1. Is the claimant presently unemployed?

2. Is the claimant's impairment severe?

8

3. Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. § 416.920(a)-(f). An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. Young v. Secretary of Health and Human Services, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than step three, precludes a finding of disability. Id. The claimant bears the burden of proof at steps one through four. Id. Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in other work existing in significant numbers in the national economy. Id.

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. Stevenson v. Chater, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. Estok v. Apfel, 151 F.3d 636, 638 (7th Cir. 1998).

Plaintiff does not contest the ALJ's conclusions at steps one through four, including his determination that Plaintiff cannot perform her past relevant work. Plaintiff only disputes the ALJ's step five determination. In her motion for summary judgment, Plaintiff argues that the ALJ's decision is undermined by his incomplete hypothetical question to the vocational expert regarding her residual functional capacity which failed to consider one of Plaintiff's alleged physical

limitations. Plaintiff also asserts, in response to Defendant's summary judgment argument, that the ALJ erroneously assessed Plaintiff's credibility. The Court considers these argument in turn.

A. **Plaintiff's Claim that the ALJ Posed an Incomplete Hypothetical Question**

Plaintiff argues that the hypothetical question relied upon by the ALJ in his step five analysis failed to take into account her inability to perform jobs requiring repetitive hand use. According to Plaintiff, the ALJ initially considered this limitation when he asked the vocational expert whether Plaintiff was capable of performing her past relevant work but then eliminated the restriction in asking whether Plaintiff could perform other jobs in the national economy. Plaintiff argues that the ALJ's removal of the limitation caused the vocational expert to identify available jobs that would require repetitive hand and finger use that Plaintiff is not capable of performing.

The assumptions contained within an ALJ's hypothetical question posed to a vocational expert regarding the claimant's work-related limitations need only be supported by the medical evidence in the record. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 540 (7th Cir. 1992). Moreover, an ALJ's hypothetical question need not itself take into account every relevant aspect of the claimant's impairments. Id. at 540. In order for the expert's responses to be probative of the claimant's residual functional capacity and which jobs a claimant reasonably can perform, "[a]ll that need be shown from the record is that before presenting his expert testimony, the vocational expert reviewed the claimant's medical evidence and was present during the claimant's administrative hearing testimony." Ragsdale v. Shalala, 53 F.3d 816, 818 (7th Cir. 1995). Nevertheless, the ALJ should require the vocational expert to expound the bases for his conclusions so that reviewing courts, in assessing the completeness of the ALJ's hypothetical questions, need not

10

rely on a presumption that the expert had full knowledge of the claimant's alleged limitations. Id. at 821.

Plaintiff asserts that the ALJ failed to include the restriction against repetitive use of the hands in the second hypothetical posed to the vocational expert. In his original hypothetical, the ALJ did ask the vocational expert to assume both that Plaintiff had to avoid repetitive hand use and could only occasionally use her upper extremities. R. 47. In response to this hypothetical, the vocational expert answered that there would be no jobs that Plaintiff could perform given those limitations. Id. However, the vocational expert's response was in part based upon his interpreting "occasional use" to mean that Plaintiff would use her hands for one-third of the day and then not be able to use them at all for the next two-thirds of her shift. R. 48. Once the vocational expert clarified that the ALJ intended occasional use to mean that Plaintiff uses her hands intermittently during the course of the day for up to one-third of her shift, he stated that there could be occupations she could perform. Id.

The record demonstrates, however, that once the definition of "occasional use" was clarified, it was still not apparent to the vocational expert whether the ALJ had intended for "avoidance of repetitive hand use" and "occasional use of the upper extremities" to be two separate restrictions in the first hypothetical. R. 48. Before the vocational expert responded to the ALJ's renewed hypothetical he requested the ALJ to also clarify what he meant by "repetitive hand use" in the following exchange:

VE     And then my only question then would be in, in regards to repetitive use of the hands, I, I don't want to assume what you might mean by that, repetitive can mean just a repeated activity, and a repeated activity can be as much as just dialing the phone, I don't know if that's what you might mean?
ALJ    Well, let's just stick [to] the definition of occasional which you're already defined, a third of the workday.

11

R. 48-49. Once the ALJ made this answer which essentially eliminated any reference to repetitive hand use from the hypothetical, the vocational expert responded that there would be a number of jobs available. R. 49. While it is clear from this exchange that the vocational expert's altered response resulted in part from the changed definition of "occasional use,"[3] the fact that he requested clarification of the ALJ's meaning of "repetitive use" before responding indicates that some sort of repetitive use restriction could have altered his conclusion that there were jobs which Plaintiff could perform. Moreover, the vocational expert's question suggests that repetitive hand use could consist of activities which might only occur sporadically throughout the day, such as making a telephone call, and which therefore might not be covered by the restriction of occasional use of the hands.

It is true that the vocational expert did hear Plaintiff's testimony regarding her restrictions and reviewed the medical documents, R. 45, which generally allows the Court to presume the expert was informed of all a claimant's limitations. See, e.g., Ragsdale, 53 F.3d at 818. However, the Court finds that the vocational expert's responses to the hypotheticals posed to him demonstrate that Plaintiff's ability to perform repetitive hand movements could have affected his response. The importance of Plaintiff's ability to perform repetitive hand and finger movements is made manifest by the fact that the ALJ specifically found in his opinion that Plaintiff could not return to her past relevant work "due to the repetitive hand and finger movements." R. 19. Therefore, at least on some level, the ALJ made a finding in his opinion that Plaintiff was not able to perform repetitive hand

---

[3] The vocational expert's explanation of his response to the ALJ's first hypothetical clearly establishes that his changed answer results from the altered definition of "occasional use": "Occasional use, for example, the person uses for two and a half hours and then can't for the rest of the day, that complete abstinence of using their arms, there's not going to be an occupation. If we add up the periods of times [sic] somebody uses their hands or arms during the day, then there are occupations where it's not going to be over occasional." R. 48.

12

movements. While it is true that Plaintiff's past work with the CTA required fairly substantial repetitive hand movements (punching or accepting 500-700 transfer tickets a day) and that there are likely numerous occupations which require less extensive repetitive movements, the Court finds this to be an assessment better left for the ALJ, and, if necessary, the vocational expert.

The Court directs the ALJ, on remand, to determine whether Plaintiff is restricted from repetitive use of her hands and fingers, the extent of that restriction, and if that restriction affects his step five determination of the number of available jobs in the national economy.

Plaintiff also maintains that the vocational expert's opinion that there are positions which would accommodate her "occasional use" limitation is inherently flawed because it fails to take into account several practical considerations: (1) Plaintiff would not be able to control the flow of arm and hand use during the workday; (2) an employer would not allow Plaintiff to stop work once she exceeds her daily limit of hand and arm use; and (3) unskilled work usually involves repetitive use of the hands. This last factor would have no effect on the analysis, because the vocational expert can identify whether there are unskilled jobs which do not involve repetitive hand use,[4] however, the first two points could be important considerations. In fact, Plaintiff's counsel explicitly questioned the vocational expert as to whether Plaintiff could control the flow of the work in the reception clerk position, which the vocational expert acknowledged would not be possible. R. 52. The second point was not addressed by the vocational expert at the hearing. The Court believes these first two factors might affect the vocational expert's opinion of the number of available jobs, should the ALJ determine that Plaintiff has a restriction against repetitive hand use.

---

[4] "Unskilled work" by definition does not require any specific physical capabilities. See 20 C.F.R. § 404.1568(a).

Therefore, on remand the Court directs the ALJ, when making his step five findings, to also consider Plaintiff's inability to control work flow and the possibility that she could exceed her daily limit of hand and arm use.

**B.     The ALJ's Credibility Assessment of Plaintiff**

Plaintiff did not allege in her Motion for Summary Judgment that the ALJ incorrectly assessed her credibility. However, Defendant's summary judgment motion (unnecessarily) asserts that the ALJ's credibility assessment of Plaintiff is supported by substantial evidence, which prompted Plaintiff to address this issue in her Reply. While Defendant need not have raised this issue, because he now has, the Court will address it.

The ALJ found that Plaintiff's allegations of pain and subjective limitation were only credible to the extent that she would be limited to the performance of light work, with occasional use of her hands and arms. R. 18. Defendant points to the following evidence in support of the ALJ's credibility assessment: medical reports which indicate Plaintiff had positive results with her conservative therapy; Plaintiff's doctors' failure to recommend that she not work but only that she quit her ticket agent position which required repetitive ticket-punching; and Plaintiff's personal activities which were inconsistent with her claim of inability to perform any type of work. Plaintiff simply responds that: "The plaintiff contends that her documented limitations were improperly considered within the guidelines set forth in Social Security Ruling 96-7p." P.'s Reply Mem. at 3.

The ALJ's credibility determinations are entitled to considerable deference. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000); Lee v. Sullivan, 988 F.2d 789, 793 (7th Cir. 1993). Since the ALJ is in the best position to observe witnesses, reviewing courts usually do not upset credibility determinations as long as they find "some support in the record and are not patently wrong." Herron

v. Shalala, 19 F.3d 329, 335 (7th Cir. 1994). Social Security Ruling (SSR) 96-7p discusses credibility assessments in the context of Title II cases and requires the adjudicator to make a credibility determination of the plaintiff's statements about symptoms and functional effects of his or her alleged impairments. Social Security Ruling 96-7p, 1996 WL 374286, *1 (S.S.A. July 2, 1996). The ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Id. If the objective medical evidence does not require a finding of disability, the ALJ must "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements." Id. The ALJ must review the entire case record including "the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence." Id.[5]

The ALJ may not disregard the plaintiff's statements about "intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to do work . . . solely because they are not substantiated by objective medical evidence." SSR 96-7p, at *2. However, consistency of the plaintiff's statements is a "strong indication" of his or her credibility." Id. at *5.

---

[5]Specifically, Social Security Ruling 96-7p requires the ALJ to consider the following factors in assessing the plaintiff's credibility: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . . and; 7) any other factors concerning the individuals functional limitations and restrictions due to pain or other symptoms. SSR 96-7p, at *3 (citing 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c)).

15

Further, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Id. at *2.

In this case, the ALJ found that Plaintiff retained the capacity to engage in a relatively broad range of daily, social, and household tasks, in that she is able to care for her personal needs, drive, travel, cook, clean, grocery shop, and attend church. R. 18. He noted that she only takes over-the-counter ibuprofen for pain, and that her treatment regimen has been conservative other than her surgery for right carpel tunnel syndrome. Id. The ALJ noted Plaintiff's report of difficulty in lifting, carrying, pushing, pulling, or reaching, and that she obtains relief from pain by using elbow and wrist splints. Id. He described her December 1995 right carpel tunnel surgery observing that she was noted to have improved significantly and to generally be doing well, and he further remarked that none of her treating physicians have opined that she is disabled and unable to work. Id.

This analysis indicates that the ALJ evaluated Plaintiff's subjective complaints in compliance with Social Security Ruling 96-7p. As expressed in his written opinion, the ALJ based his assessment upon the objective medical evidence, Plaintiff's daily activities, the nature of her symptoms, precipitating and aggravating factors, the medications and any side effects, and other treatment and measures to relieve symptoms. R. 17-18. The ALJ concluded that Plaintiff's complaints were credible "only to the extent that she would be limited to the performance of light work, with only occasional use of her hands and arms." R. 18. He explained that Plaintiff's subjective complaints of functional loss are not corroborated by the objective medical evidence and that Plaintiff's self-described range of daily activities is not consistent with her claim of disability.

16

R. 18; Knight v. Chater, 55 F.3d 309, 314 (7th Cir. 1995) (ALJ may discount a plaintiff's subjective complaints of pain that are "inconsistent with the evidence as a whole"). The ALJ noted that Plaintiff testified that she retains the capacity to engage in a relatively broad range of daily, social and household tasks. R. 18. The Court finds that the ALJ properly evaluated Plaintiff's credibility pursuant to Social Security Ruling 96-7p, and, therefore, affirms the ALJ's credibility determination.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED and Defendant's motion for summary judgment is DENIED. This matter should be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Opinion and Order. Upon remand the ALJ should consider whether Plaintiff is able to engage in repetitive hand and finger movements and the effect that has on her ability to perform a significant number of unskilled light jobs in the national economy. The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against the Commissioner pursuant to Federal Rule of Civil Procedure 58.

ENTER:

*Nan R. Nolan*
**Nan R. Nolan**
**United States Magistrate Judge**

Dated: 3/30, 2001.